# Board of Drainage Commissioners of Daviess County, et al. v. Stephens, et al.

(Decided February 12, 1926.)

## Appeal from Daviess Circuit Court.

1. Statutes—Language of Entire Act, Including Title, Considered in Ascertaining Legislative Intent.—In determining legislative intent, court will look, not only to language of all parts of statute, but to title as well.

2. Drains—Cost of Improving Drain in Excess of 10 Per Cent Maintenance Allowance Authorized.—In view of Ky. Stats., sections 2380-1, 2380-2, 2380-22, 2380-49, cost of improvements of existing drain to make it adequate to serve district is not limited by seciton 2380-39, permitting 10 per cent assessment for maintenance, nor is proceeding for such improvement invalid as one to create second drainage district covering same territory.

J. R. HAYS, W. E. AUD and J. R. HIGDON for appellants.

ALBERT B. OBERST and R. MILLER HOLLAND for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

Prior to the institution of the proceedings here involved there had been duly established a drainage district in Daviess county known as the "John Gillis drainage district." Principal and lateral ditches were dug pursuant to the recommendations made and rendered in the judgment creating and establishing that district, all of which was done pursuant to chapter 132, Acts of 1912, page 483, and now being section 2380 of our present statutes with its 51 subsections. That statute provided that after the establishment of the district by the judgment of the court and the direction of the improvements therein found to be necessary the board of drainage commissioners for the county should take charge and construct the improvement in accordance with the judgment of the court, and by section 39 of that act (now section 2380-39) such board of drainage commissioners are permitted to assess the benefited lands as much as 10 per cent of the original cost of construction, allotted to and collected from the particular lands, for the purpose of creating a maintenance fund and which may be spent by the board to clean out the ditch or ditches and to maintain them in an unobstructed condition.

This proceeding was commenced by the board of drainage commissioners of Daviess county and a large per cent of the owners of land living within the originally established ''John Gillis drainage district,'' filing a petition in the county court of Daviess county in which it was averred, in substance, that the originally constructed ditches were insufficient to drain the lands within the district, or to accomplish the purpose of establishing the district, in that they were improperly constructed on account of the sharp curves therein, and were never deep enough or large enough to accomplish the purpose for which they were dug, nor was there a sufficient number of ditches to accomplish that purpose. They further alleged that the limit of ten per cent assessment referred to above would create a sum entirely inadequate to do the necessary additional work of straightening and deepening the ditches already dug and the digging of others that were absolutely necessary, and that unless a larger amount than the 10 per cent could be made the whole scheme and purpose of forming the district would prove to be worthless and the money already spent completely lost. They, therefore, prayed for the appointment of viewers to go upon the territory and report what was necessary to be done in order to make the project a success and to accomplish the purpose intended. Viewers were appointed and they reported the facts to be as alleged in the petition. Thereupon summons was issued for all the landowners in the district who had not joined in the petition, and after being served they came into court and filed a special demurrer to the proceeding upon the ground that the court was without jurisdiction to entertain it. It was sustained, after the petition had been amended by a more elaborate and detailed statement of the facts, and the petitioners declining to plead further the proceeding was dismissed, from which judg-- ment they prosecuted an appeal to the Daviess circuit court wherein the same practice was followed with the same results, and from the judgment of the court dismissing the proceedings appellants prosecute this appeal.

The sole reliance of the appellees' counsel in their brief filed in this court is our opinion in the case of Alms v. Burns, 206 Ky. 283, wherein it was held that a *second* drainage district could not be created by original proceedings within or over the identical territory where a prior one had been created and, since the proceedings

there involved were construed to be an attempt to create such a second district, we there held that the court had no power or jurisdiction to do so. It was furthermore held in that opinion that the petition was otherwise defective for want of proper averments therein. Neither did it appear in that proceeding, as it does in the one before us, that the ten per cent assessment which the board of drainage commissioners was authorized to collect for maintenance purposes was insufficient to provide the necessary funds with which to make the drainage project a success. It is, therefore, apparent that the Alms case involved facts entirely different from those we have here, and that the opinion therein is no authority for the determination of this case. Here there is no pretense or effort to create a *second* drainage district covering the same territory, but only to raise the necessary funds, if the facts as alleged be true, to make the drainage project a success and to carry out the original purpose of the establishment of the district, and which can not be done without power and authority to procure funds more than can be done by the authorized ten per cent assessment. The question, therefore, is: Does the statute authorize such a proceeding?

In determining that question not only should we look to the language of all parts of the statute, but we are also authorized to consider the title of the act so as to get at the intent and purpose of the legislature in its enactment. The title of the act reads: "An act relating to the drainage of lands, the establishment and construction of public levees, ditches and drains, and the *straightening, widening, deepening or otherwise improving* public levees, ditches, drains, creeks or nonnavigable streams, prescribing the method of procedure, the assessment and collection of the costs and expense thereof, creating and incorporating boards of drainage commissioners, and prescribing the duties and providing for the payment of officers and employes having duties to perform thereunder." (Our italics.) It will be observed that the purpose therein expressed was not only the "establishment and construction" of ditches, etc., but also "the straightening, widening, deepening or otherwise improving" such public ditches, etc. The straightening, widening, deepening, and otherwise improving the public ditches originally constructed was as much a part of the intent and purpose of the act as was their original construction, and nowhere in the act is there any limit put upon the

cost of such straightening, deepening, widening, etc. The first section of the act (2380-1 of our present statutes) in conferring jurisdiction on the county judge expressly says that it shall extend to not only constructing the proposed improvement, but also to straightening, widening or deepening any ditch, etc., and it is further stated that the powers therein conferred were "all for the purpose of draining or reclaiming low, swampy or overflowed lands in such county;" thereby indicating that the primary purpose of the sum total of jurisdiction conferred was, in the end, that of reclaiming of such swampy land. Clearly, therefore, the very purpose of the statute could not be accomplished by originally constructing inefficient improvements, be they ditches or other authorized improvements.

The beginning of section 2 of the act (2380-2 of our present statutes) says: "Before the county judge shall establish, *widen, straighten, deepen* or construct any such levee, ditch, drain, canal, creek or water course, there shall be filed with the county judge a petition," &c. (our italics), which clearly indicates that, not only the establishment of such improvements shall be accomplished by the filing of such a petition, but likewise the widening, straightening, deepening, etc., of such ditches or improvements shall be accomplished by the filing of the same character of petition, and which to our minds, the legislature clearly intended for the purpose of meeting a state of facts such as is involved in the instant case; and the proceedings following the filing of the petition are the same as are adopted in the original establishment.

Section 22 of the act (2380-22 of our present statutes) says that the decree or order of the court by which any drainage district may be organized under the act may be amended at any time for the purpose of making corrections therein, among which is "amending the decree or incorporation in any manner which may be necessary to better carry out and fulfill the object of the drainage district;" and in the same section it is provided that such amendments may be made by the presenting of a supplemental petition to the court having jurisdiction.

Section 49 of the act (2380-49 of our present statutes) provides that "The provisions of this act shall be liberally construed so as to carry into effect the true intent and meaning thereof, and to promote the leveeing, ditching, draining and reclamation of wet, swampy, or over-

flowed lands." · If the present proceedings could not be maintained, then the petitioners are wholly without remedy and are forever barred from accomplishing the purposes of the act by having the lands of the district drained as therein contemplated; for, if they can not procure sufficient funds with the ten per cent assessment that the board of drainage commissioners may assess and collect then they would be altogether without power to raise a sufficiency of funds to carry out the purposes of the act and, since they can not organize a new district covering that territory, they would be compelled to allow their lands to be overflowed and to forego all of the benefits of the act and also lose all funds theretofore expended. To give such a construction would not only be in the face of the title to the act, as well as its provisions to which we have referred, but would also require us to ignore entirely the admonition contained in its section 49, *supra,* requiring its liberal construction so as to carry into effect the true intent and meaning thereof so as to promote the draining and reclamation of wet, swampy land.

It, therefore, is our conclusion that under the facts as alleged in the petition the court had jurisdiction to entertain it and to proceed with the case to its final termination in the same manner as is provided for the original establishment of the district, and that the court erred in sustaining the demurrer filed thereto.

Wherefore, the judgment is reversed, with directions to set it aside and overrule the demurrer filed to the petition, and to proceed with the cause consistent with this opinion.