## Grieb, County Clerk, et al. v. National Bond & Investment Co.

(Decided April 24, 1936.)

290

LAWRENCE S. GRAUMAN and STUART E. LAMPE for appellants.

SHACKLEFORD MILLER, JR., for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing on appeal and Affirming on cross appeal.

The appellee and plaintiff below, National Bonding & Investment Company, is an Illinois corporation, but authorized to do business in Kentucky, and has its principal office in the city of Louisville. The business in which it is engaged relates to automobile transactions; i. e., it purchases and deals in notes executed by the purchasers of automobiles to the seller. It also advances money in benefitting sellers of and retail dealers in automobiles by paying the manufacturer

for them and taking a mortgage from the dealer to it as security for the advanced wholesale price with the obligation of the retail dealer to liquidate the mortgage following the sale by him of the mortgaged automobile. The sales by the retailer, in consideration of which he takes the notes of the purchasers, which are dealt in and handled by plaintiff, are conditional sales with retention of title in the retail dealer until full payment for the automobile is made by the purchaser. The character of papers, therefore, in which plaintiff deals, may be classified as (1) the conditional sales contract that the retail dealer takes from the purchaser, and (2) the mortgages it takes from the retail dealer when it pays the manufacturer for the cars handled by him.

The appellant and one of the defendants below, John P. Grieb (John E. Buckingham, the other one, being treasurer of the commonwealth of Kentucky), is the duly elected, qualified, and acting county court clerk for Jefferson county. Plaintiff presented to him some instruments of both classes, (1) and (2), supra, for record and tendered to him the fee of $1 prescribed by law as part of the emoluments of the clerk's office; but the latter declined to record the instruments unless plaintiff also paid an additional $1.00 tax contained in section 4238 of Baldwin's 1933 Supplement to Carroll's Kentucky Statutes, 1930 edition, and which amendment is chapter 151, page 709, of the Session Acts of 1932. The amended section (when clarified from some ambiguities for the first time injected therein by the 1932 act) purports to levy a tax on certain subjects and transactions therein enumerated, including a levy for the recording in the county court clerk's office of recordable instruments. It also purports to levy a tax on many other transactions, among which are, a marriage license fee of $3.50; a jury fee of $4 upon the termination of civil actions; a filing tax on suits involving an amount of $50 or more; a tax on appeals to the Court of Appeals, and various transactions—all of which have been considered as having been duly prescribed for as much as three-quarters of a century. During all of that time clerks and other officials with whom the enumerated tax transactions were had have collected the specified tax and made due report thereof. The 1932 amendment principally raised

the amount of the supposed tax for recording instruments from 50 cents to $1, and increased the tax for marriage licenses from 50 cents to $3.50. Perhaps some other minor changes were also enacted therein, but the two we have mentioned constituted the principal ones.

Plaintiff declined to pay the $1 tax demanded by defendant Grieb upon the grounds that: (a) The section of the statute as so amended by the 1932 act contained no levying clause, nor did it specify the county court clerk as the proper collecting officer of the tax; and (b) that the ambiguity first injected into the section by the 1932 act (and hereinafter referred to and discussed) destroyed the mandatory requirement for the particular enacted tax, even if the section contained a levying clause as well as a provision that the county court clerk should collect the amount. Such refusal of the county clerk to record the tendered instruments was followed by plaintiff filing this declaratory judgment action in the Jefferson circuit court against him and the state treasurer for Kentucky in which a declaration of rights was prayed for. In its petition plaintiff averred the facts to which we have referred, with required elaboration and particularity, and in which it made the contentions referred to. Defendants' demurrer filed to the petition was overruled, followed by an answer denying the averments of the petition in so far as they contested the right to exact the tax, and in another paragraph defendants averred and relied on long-continued contemporaneous construction by all state and county officers within the commonwealth having any duties to perform with reference to any of the matters or taxed items set out in the section, and also such continued construction for the same time by persons called upon to pay the demanded taxes.

The court struck out, as well as sustained, a demurrer to, those paragraphs, and later rendered judgment declaring that the section of the statute under consideration (4238) imposes the tax sought to be collected from plaintiff; but that the county clerk, with whom the transaction was had, was not vested with the duty to collect it, and adjudged that the rightful collector of it was the sheriff of the county under the authority conferred on him by section 4129 of our

statutes (Ky. Stats., 1930), and that, if the sheriff should fail to make such collection within the prescribed time (none of which is provided for), it then became the duty of the revenue agents of the state and county to make the collection, pursuant to the authority conferred by section 4263 of the same statutes. It was recited in the judgment that "by the provisions of sections 27 and 28 of the Constitution of the State of Kentucky, the right or authority to collect said tax upon the recording of said instruments is not conferred upon said defendants or either of them." We fail to grasp the pertinency of that excerpt, and we are also of the opinion that the learned chancellor was in error in concluding that the officer with whom the taxed transaction was had was without authority to collect the tax; but we coincide with his determination that the tax was properly levied and was due to be paid by plaintiff, and which conclusions we will now proceed to demonstrate.

The contention that the conditional sale contract by the dealer to his customer, wherein the title is retained in the dealer until payment is fully made, is not an instrument embraced in the taxing statute, is, as we conclude, erroneous, and the judgment disallowing that contention has our approval. It is true that it has been held, since the enactment of our Uniform Sales Act (Ky. Stats., secs. 2651b-1-2651b-78) that conditional sales wherein the title is so retained in the seller confers some additional rights on the latter above those possessed by him under a regular mortgage; but in the same cases it was also held by us that for all practical purposes, especially in so far as incumbering the sold article with a lien in favor of the seller is concerned, the two instruments, i. e., that of mortgage and conditional sale, were practically the same, and that the holder, in order to protect his lien against future acquired rights by innocent persons, should record the sale contract the same as is required of mortgages. See Brown v. Woods Motor Company, 239 Ky. 312, 39 S. W. (2d) 507, and Cartright v. C. I. T. Corporation, 253 Ky. 690, 70 S. W. (2d) 388. It was expressly so held by us in the case of Munz v. National Bond & Investment Co., 243 Ky. 293, 47 S. W. (2d) 1055. It is therefore clear that this contention on the part of plaintiff is without merit, which brings us to a con-

sideration of ground 2, supra, as a reason urged for plaintiff's nonliability for the demanded tax.

In our investigation of the question we have not seen proper to search the records of the Legislature farther back than chapter 1233, page 140, volume 1, of the Session Acts of 1885-86, the title thereof being: "An act to amend the revenue laws of the Commonwealth of Kentucky." The act is a comprehensive one, and is divided into numerous articles, some, if not all, of which are divided into subdivisions covering all property and every transaction by and upon which revenue for the state is levied and raised. The sections in each article are numbered, beginning with 1 and continuing in numerical succession throughout each article. Article 5 begins on page 154 of the volume of acts referred to, and the beginning of its fourteenth section is on page 157. The first sentence of that section says: "Tax on law processes, the recording of deeds, powers of attorney, official copies and sales, shall be as follows and paid in advance." The beginning of the article on page 154 deals with the levying of license taxes, which are expressly enacted in the article, though upon other things and transactions than those enumerated in its section 14. The first compiled statutes for the state, after the enactment of chapter 1233 in 1886, was Bullitt and Feland's General Statutes of Kentucky, edition of 1887. Its chapter 92, beginning on page 1034 under the heading "Revenue and Taxation," is an exact reproduction of the 1886 act, including its arrangement in articles and subdivisions thereof, as well as the sectionizing of each article. On page 1050 of that volume is a reprinting of section 14 of article 5, supra, of the 1886 act, including its beginning levying clause that we have above inserted.

The next compilation of the Kentucky Statutes, following the volume of Bullitt and Feland, to which we have referred, was gotten out in 1894 by Barbour and Carroll, and in the arrangement of that compilation the editors began for the first time to sectionize numerically the statutes throughout the volume, beginning with 1 and continuing numerically to the end of the book. In publishing the taxes levied by section 14 of article 5, supra, of the 1886 act, the compilers

of the 1894 statutes designated the matter therein contained as section "4238," but omitted to insert the levying clause just preceding the enumeration of the transactions taxed. No session of the Legislature between the publication of Bullitt and Feland's 1887 statutes, and that by Barbour and Carroll in 1894, had repealed the levying sentences referred to, and it is clearly manifest that the compilers of the latter statutes, by oversight or mistake, omitted to insert as the beginning sentence in their section 4238 the levying clause; or, perhaps, they were under the impression that other parts of the general statutes, which they for the first time sectionized in the manner indicated, clearly made it appear that the matter they inserted as section 4238 was a valid tax levying statute. But, whatever reason exists for the omission, it is nevertheless true that its occurrence in the manner indicated did not have the effect to repeal the levying clause, but only the effect of ceasing to carry it in the compiled statutes. It remained a part of the law all the while, but barred from the privilege of occupying the mansion (authorized compiled statutes) supposed to contain all of the statutory law of the commonwealth.

Following the compilation of 1894, other editions were gotten out, but by the Hon. John D. Carroll alone, one of the first compilers thereof, and, since his first edition, our statute has been known and referred to as "Carroll's Kentucky Statutes." In the following editions so edited and compiled by Judge Carroll he continued to carry section 4238 as contained in the Barbour and Carroll edition in 1894, with the levying clause, supra, omitted from that section. Occasionally there would be amendments of the section, relating chiefly to the incorporation of some additional transactions with the attached tax fee, and in altering the fees for other transactions. The last one of such amendments was chapter 151, supra, of the 1932 acts, the title to which reads: "An act to amend and re-enact Section 4238, Kentucky Statutes, Carroll's 1930 Edition, relating to revenue and taxation, so as to increase the State tax on the recording of certain instruments and marriage licenses." The section was therein re-enacted with the amendments inserted, but again without incorporating the original levying clause. The omissions to which we have referred furnishes the

ground for argument (a), supra, and which counsel for plaintiff thus states in his brief: "Section 4238 of the Kentucky Statutes does not by its terms impose any tax upon any of the transactions therein set out, but, on the contrary, is merely an enumeration of various kinds of transactions, followed by price marks without in any way attempting to state that any tax, regardless of how much, is to be paid to any official. In other words, the section completely fails to contain the necessary words to create the tax contended for by the appellants. This fatal omission can not be cured by judicial construction, regardless of the intention of the legislature."

Following that, and on the same page, is this statement: "Section 4238 does not say that the tax contended for is to be paid by the person recording the instrument." Later in the brief, and still on the same page, it is stated that the statute as contained in all editions beginning with the 1894 one, supra, "is merely an enumeration of various transactions, each one accompanied by a so-called price mark, but nowhere stating that the amount indicated is to be paid as a tax to the State of Kentucky upon the entering into of such a transaction. The incompleteness of this Section of the Statute has been previously remarked upon by this Court, and, accordingly, the present matter is not one of first impression by the Court of Appeals. The same section was up for consideration by this Court in the case of Carrell v. Miller Finance Co., 250 Ky. 648, 63 S. W. (2d) 791, 792." The Carrell Case therein referred to did not present the question we have here, but in the course of the opinion it was observed: "'That section [4238], beginning with an incomplete sentence, is," etc. Further references in the opinion are made to that section in the opinion, wherein it is said: "The statute does not say that these are taxes or by whom or to whom they shall be paid"; and again: "It is to be further noted that section 4238 does not specifically say that a tax should be paid by any one, or that the amounts specified for the items enumerated therein are taxes." But the case went off, both in the trial court and here, upon the determination that the transaction there involved was not embraced within the enumerated ones in section 4238, and not upon the theory that the section was not effective for levy-

ing the amounts therein specified upon the enumerated transactions.

The excerpts taken from our opinion in that case were evidently inspired from a consideration of the printed language of the section and without going into the history of the statute which we have hereinbefore incorporated. Our conclusion, therefore, is that the levying clause supra, as originally enacted in 1886, has never been repealed, but has remained a part of the section of the statute continuously since then, although it has not appeared in any of the editions of the statute since the one compiled by Bullit and Feland in 1887. Furthermore, we are likewise convinced that the omission to incorporate it in all following editions and compilations of our statute did not have the effect of repealing it, and that, when the section, as so incorporated with that clause omitted, was thereafter amended, such amendatory acts did not repeal the levying clause. Complete authority for that conclusion is found in the case of Commonwealth v. Porter, 242 Ky. 561, 46 S. W. (2d) 1096, and also in other cases therein catalogued.

It is therefore clear that the first part of ground (a), i. e., that the statute fails to make any levying of the tax, is without merit; and it also follows that the second part of that ground, i. e., that the officer who performs the taxed transaction is without authority to collect the tax, is unfounded, since the levying clause expressly provides that the tax shall be "paid in advance." That latter requirement necessarily means that the one requiring the taxed transaction to be done and performed shall, before it is done or performed, pay the taxes due thereon, and which conclusion inevitably eliminates from the case the determination of the learned trial judge when he held it was the duty of the sheriff to afterwards collect the tax, and, if not done by him, then it was to be collected by the revenue agents, since the statute expressly requires that there shall be no postponement of the collection of the fee. By inescapable inference it is thereby provided that the payment "in advance" is to be made to, and the tax collected by, the public functionary whose duty it is to perform the taxed transaction.

The next and final question relates to ground (b)

supra, which is based upon the patent ambiguity contained for the first time in the last amendment in 1932 of section 4238. That amendment as so enrolled, and as contained in the Session Acts of that year, as well as in Baldwin's 1933 Supplement to the Kentucky Statutes, says, inter alia: "On each proceeding to revive a judgment and fifty cents ($.50) on each deed or power of attorney to convey real or personal estate, or any mortgage or conveyance or real or personal property, or lien or conveyance of coal, oil, gas or other mineral right or privilege, one dollar ($1.00)." The immediately following transaction upon which a tax is imposed is the issuance of a marriage license with the tax fixed at "three dollars and fifty cents ($3.50)." Section 4238, as contained in the 1930 edition of Carroll's Kentucky Statutes (which was the edition containing the section to which the amendment applied), following the semicolon at the end of the clause levying the tax on forcible entry and detainer proceedings, read and was so punctuated, as relating to the taxed transactions here involved, thus: "On each proceeding to revive a judgment; on each deed or power of attorney to convey real or personal estate, or any mortgage or conveyance or real or personal property," etc. The ambiguity and confusion found in the 1932 amendment relating to the transactions here involved was and is evidently due to an oversight or mistake on the part of the draftsman of that amendment in inserting the word "and" after the word "judgment" and in not placing a semicolon after the words "fifty cents" in the levy made "on each proceeding to revive a judgment fifty cents," or that the enrolling clerk made that mistake or omission when the statute was finally enrolled after its enactment. We therefore unhesitatingly conclude, not only that such mistakes were made, but also that courts have the power and authority to correct them when so plainly apparent, in order to carry out and enforce what was plainly the intent and purpose of the Legislature, and especially so when it may be done so as not to impair or in any wise modify such intent and purpose.

The universal rule is, that in construing statutes it must be presumed that the Legislature intended something by what it attempted to do, and, further,

that any clearly apparent mishap in the insertions or omission of a word or words or punctuation which would destroy or impair what is otherwise the plain intent and purpose should be eliminated, and, if necessary to carry out that intent and purpose, such omissions may be supplied by the courts. When such authority is exercised within such limitations, it does not transgress the rule that courts should not legislate, but only construe. As evidence that it was not the intent of the members of the 1932 Legislature to eliminate the tax here involved, the title to that act confined its body "so as to increase the State tax on the recording of certain instruments and marriage licenses." It did not propose to eliminate any of the taxes enumerated in the section, and an examination and comparison of the amendment with the original section discloses that there was an increase on the two items or transactions mentioned in the title, provided the ambiguity is cleared away in the manner hereinbefore pointed out. Such "clearing away" is accomplished by the elimination from the 1932 amendment of the words "and fifty cents ($.50)," and inserting in lieu thereof a semicolon.

That the title to an act may be examined by the courts and resort thereto be made in arriving at its true construction was declared by us in the cases of Wheeler v. Board of Commissioners of City of Hopkinsville, 245 Ky. 388, 53 S. W. (2d) 740; Board of Drainage Commissioners of Daviess County v. Stephens, 213 Ky. 30, 280 S. W. 456, and Commonwealth v. Barnett, 196 Ky. 731, 245 S. W. 874. Also that it is competent for courts to make such alterations by proper eliminations and insertions as above pointed out, under such limitations, was approved by us in the cases of Commonwealth v. Fenley, 189 Ky. 480, 225 S. W. 154; Commonwealth v. Hatfield Coal Co., 186 Ky. 411, 217 S. W. 125; and Nichols v. Logan, 184 Ky. 711, 213 S. W. 181. Those opinions, as well as all others relating to the subject, recognized the cardinal rule to be that it is the duty of the court to ascertain from the entire statute the intent and purpose to be accomplished in its enactment, and that, when such intent is clearly manifested, it should be carried out, even though it becomes necessary for that purpose to give unusual meaning to particular words, and "sometimes

by altering their collocation; or by rejecting them altogether; or by interpolating other words; under the influence, no doubt, of an irresistible conviction, that the legislature could not possibly have intended what its words signify, and that the modifications thus made are mere corrections of careless language, and really give the true intention. The ascertainment of the latter is the cardinal rule, or rather the end and object, of all construction, and where the real design of the legislature in ordaining a statute, although it be not precisely expressed, is yet plainly perceivable, or ascertained with reasonable certainty, the language of the statute must be given such a construction as will carry that design into effect, even though in so doing the exact letter of the law be sacrificed, or though the construction be, indeed, contrary to the letter.'' The excerpt is taken from Endlich's work on the Interpretation of Statutes, sec. 295. Other cited opinions on this point are equally emphatic in approving the right and duty as well as authority of courts to so act under circumstances clearly authorizing it. There can be no doubt but that the confused and ambiguous language of the 1932 amendment of section 4238 furnishes an instance where such authority on the part of the courts should be exercised. It therefore follows that the court correctly held that plaintiff should pay the questioned tax on both classes of instruments, but incorrectly held that defendant, as county court clerk, had no right to make the collection.

Wherefore the judgment is reversed on the appeal and affirmed on the cross-appeal, with dirctions to enter one in conformity with this opinion and to dismiss plaintiff's petition.